## WILLIS & BROTHER v. JANE STAMPS.

1. Appellee held and claimed to own an acceptance of the plaintiff, which the appellants also claimed as their property by assignment from the payee prior to his endorsement and delivery of it to the appellee, who, the appellants alleged, had notice of their rights at the time of the endorsement. The acceptor brought this suit of interpleader against appellants and appellee, to determine which of them was entitled to receive payment of the acceptance. At the trial the plaintiff waived the opening and conclusion to the jury, and the appellants claimed the same as their right, but the court below accorded to the appellee the opening and conclusion. *Held*, that there was no error in this ruling ; because the appellee was under the necessity of establishing her ownership by proof, before she could be entitled to judgment in her favor.

2. In the case above indicated, and the endorsement being in blank, the court below instructed the jury that inasmuch as the endorsed acceptance was in the possession of the appellee, there was a presumption of law that she was the owner of it for value; and that it devolved on the appellants to rebut that presumption and to prove that they owned the acceptance when it was transferred to the appellee, and that when she acquired it she had notice of their right to it. *Held*, that this was a correct exposition of the law of the case.

APPEAL from Harris. Tried below before E. P. Hill, Esq., special judge, selected by the parties in consequence of the dis-

qualification of the district judge, the Hon. James Masterson, who had been of counsel for the appellants.

There were peculiar features in this case arising from the evidence adduced by the appellants in the court below; but as the opinion of this court, treating them as concluded by the verdict, makes no express reference to them, there is no occasion to detail them in this statement of the facts. The most material of them, however, are indicated in such portions of the argument of counsel as it appears useful to insert.

The draft in question was drawn by W. S. Wright in favor of R. P. Faddis, on the Treasurer of the Houston and Texas Central Railway Company, for $448.41. It bore date March 28th, 1868, and was payable at twenty days' sight. The acceptance of the Company was written across its face, and bears the date of April 27th, 1868. Faddis, however, states in his testimony that the Company refused to accept " for nearly a year," and other parts of the testimony indicate a much longer delay of acceptance than these dates denote. However, if there is any mistake about the dates, it has no bearing on the material questions of the case.

*Manley & Masterson*, for the appellants.

It is urged as a sufficient cause of reversal of the judgment entered in the case at bar, that appellants, having the affirmative of the issue, had the right through counsel to open and conclude the argument before the jury, and that the court erred in permitting counsel for appellee to open and conclude. (1 Texas R., 849; Rule 3, 32, Texas R., 815; Rule 3, Ib. 821; Rule 30, id.)

" Where the defendant admits the allegations of the petition " and relies upon special matter in avoidance, he has the right to " open and conclude." (3 Camp. 366; 2 Starkie, 518.) The admission of Jane Stamps' *prima facie* right to recover, brings the case at bar under the last recited rule. Has appellant's case

been injured by the ruling complained of? We insist that it has; and that the establishment of the rule by our courts shows a knowledge and appreciation of the fact that juries are greatly influenced in making up their verdicts by the last appeal of counsel, and the danger of injustice to the party having the burthen of the case flowing from such influences is averted, or sought to be by the rule. The point was insisted upon and reserved by bill of exception.

Again, we insist that the second assignment of errors is well taken, viz.: That "the court erred in its first charge to the "jury;" because by the charge it is left for the jury to determine what state or items of fact were necessary to pass title or "ownership" of the acceptance from Faddis to appellants, and hence was not responsive to *all* of the facts of the case. The jury might have fallen into the common error and believed that the "ownership" of the acceptance necessarily followed the possession, for aught that appeared in the charge to the contrary. A jury uninstructed may not know *exactly* at what time in the negotiation the contract for the purchase or sale of a chattel is complete, whether, in the case at bar, the title or "ownership" of said acceptance passed from Faddis to appellants by the offer upon the part of Faddis to turn over said acceptance as a part payment of his indebtedness to them, and their acceptance within a reasonable time of said offer, or whether the title remained in the seller until a delivery. The appellants, by their pleadings, claim that they had the legal title to said acceptance at the time that Faddis attempted to make a second sale of it to appellee, and stated such facts that would, in law, pass the title from Faddis to them. Yet the jury, uninstructed, would not know whether such facts, if true, would make appellants the ".owners" of the acceptance; and the judge's charge: "If you believe from the evidence that "Willis & Bro. owned the acceptance at the time of the transfer "to Jane Stamps, you will find for them," did not enlighten them upon the subject, and they, in the absence of such knowledge, might, consistently with the charge, have found for Jane

Stamps, and yet believed that Harris in his deposition told the whole truth.

Then, did the title pass from Faddis? It is a well-established principle of law, and laid down as such by all of our elementary writers, that when the minds of the contracting parties for the sale of a chattel meet in one common intent or purpose, that is, an offer of sale by the seller, and an acceptance by the buyer, with a tender of the price, the sale is complete as to the seller (and all others, with actual or constructive notice), and an action for the delivery of the articles so bought would lie in favor of the buyer. Apply this rule to the case at bar, and who would be the owner of the acceptance? Faddis, being indebted to appellants, offered in payment the draft of Wright upon the Central R. R. Company, at that time not accepted by the R. R. Company, when appellants (in the language of witness Harris) then and there accepted it. Here their minds met, but Faddis, not having the paper with him, did not deliver it at once, and in a few days after, when called upon to deliver the draft, he refused to do so, for reasons hereafter shown. Now, it is clear that, the minds of Faddis and Willis & Bro. having met upon the subject of the sale, and the price having been paid by cancellation of so much of Faddis' indebtedness to Willis & Bro., the title of Willis Bro. to the draft is good against Faddis and all others having notice, actual or constructive, and a suit for the delivery will lie in favor of Willis & Bro., and in this case suit had been brought in Austin county v. Faddis for the possession of the draft, and service made long before his pretended sale to Jane Stamps. In the case of Taylor v. Merchants' Fire Insurance Company (although the decision was given upon an insurance contract, the reasoning of the court is quite applicable to all other bargains between parties), Nelson, Judge, who delivered the opinion of the court, said: "On the acceptance of the "terms proposed, transmitted in due course of mail to the Com-"pany, the minds of both parties have met on the subject, in the "mode contemplated at the time of entering upon the negotia-"tion, *and the contract becomes complete.*'

Mr. Benjamin on Sales, pages 218 and 219, cites the following authority as the law of the present day in regard to the sale of chattels, and says: "In Summons v. Swift, Bayley, "Judge, said: Generally where a bargain is made for the purchase "of goods and nothing is said about payment or *delivery*, the "property passes immediately so as to cast upon the purchaser "all future risk;" as in the case at bar, the insolvency of the drawer (Wright), non-acceptance by the drawee, or their insolvency after acceptance.

In the case of Dixon v. Yates (referred to on top page Benjamin on Sales, 219), Parker, Judge, said: "I take it to be "clear that by the law of England the sale of a specific chattel "passes *the* property in it to the vendee without *delivery*. "Where by the contract itself, the vendor appropriates to the "vendee a specific chattel, and the latter agrees to pay the "stipulated price, the parties are then in the same situation as "they would be after a *delivery* of goods in pursuance of a "general contract. The appropriation of the chattel is equiv- "alent to a delivery by the vendor, and the assent of the ven- "dee to take the specific chattel and to pay the price, is equiv- "alent to accepting possession. The effect of the contract, "therefore, is to vest the property in the bargainee."

The payment was made in the case at bar the moment the minds of the contracting parties (Faddis and Willis & Bro.) harmonized upon the subject of the sale of the paper. That instant Faddis was released of that amount of his indebtedness to appellants; and if the drawer and acceptor of the paper had failed, the loss would have fallen upon appellants, and not upon Faddis. And in the event of Faddis' bankruptcy immediately thereafter, appellants would not have been allowed to prove up their claim against his estate, but would have to look to the draft for their debt.

The title to the draft then having passed from Faddis to Willis & Bro. without delivery, the subsequent purchaser took only such title as Faddis was able to convey, unless she could claim the benefit of the equitable rule, established for the pro-

tection of innocent purchasers for value, and without notice of the want of title in Faddis, either actual or constructive. The endorsement of a bill or note passes no property, unless the endorser had at the time a legal property in the note. (Mead v. Young, 4. T. R., 28; Brownage v. Lloyd, 1 Exch., 31; Lloyd v. Howard, 1 E. L. & E., 227; Awde v. Dixon, 6 Exch., 869; Prescott v. Brinsley, 6 Cush., 233; Clark v. Boyd, 3 Hamm., 56; Clark v. Sigourney, 17 Conn., 511.) The purchase of the draft by Jane Stamps was after its maturity, and hence was notice of all defects of title and other equities. It came to her discredited; she was put upon her guard; and although she may have paid a full consideration for it, she received nothing but the title and rights of her assignor. (Chalmers v. Lanson, 1 Camp., 383; Thomas v. Newton, 2 C. & P., 606; Smith v. Hiscock, 14 Me., 449; Hascall v. Whitmore, Ib., 102; Brown v. Davies, 3 T. R., 80; Beek v. Robley, H. Bl., 89, n. [d]; Howard v. Ames, 3 Met., 308; Mackan v. Holland, 4 Id., 69; Potter v. Tyler, 2 Id., 58; McNeil v. McDonald, 1 Hill [S. Car.], 1; Mosteller v. Bosh, 7 Ired. Eq., 38; Conney v. Kendall, 5 La. An., 515; Sawyer v. Hoovey, Id., 153; Lancaster Bank v. Woodward, 18 Penn. St., 357; Clay v. Cottrell, Id., 408.)

Jane Stamps bought the draft *lis pendens*, and, hence, had notice. (Portis v. Hill, 30 Texas R., 530.)

Now, the title to the draft having passed to the appellants, with notice to appellee, and the concomitants of appellants' title having been set out in the pleading, the judge should have charged the jury in such a manner as to enable them to determine, by an application of the facts to the law relative to the passing of title from vendor to vendee, whether or not such facts passed title, and not have required them, in ignorance of such things, to determine what constituted "ownership;" and it is but fair to presume that their ignorance of what constituted "ownership," coupled with the chance to escape from their perplexity by following the charge as to the presumption [that the "ownership" was with the

possession], controlled them, or, at least, greatly influenced them, in bringing in their verdict for Jane Stamps.

Appellants' counsel foresaw the danger of a verdict against them, without a fair consideration of the facts by the jury, and asked charges responsive to the pleadings and all of the facts, which were refused. In the case of Chandler *v.* Fulton, 10 Texas R., 21, Wheeler, Judge, said: "If an erroneous "charge has been given to the jury, which may have influ- "enced the finding, and in the absence of the ruling the find- "ing might have been different, a new trial will be granted, "although this court may be satisfied with the verdict."

*Stewart & Barziza*, for the appellee.

The charge of the court was as follows:

" *Gentlemen of the Jury:*—This is a controversy between "Jane Stamps and P. J. Willis & Bro., as to the ownership of an "acceptance which is in evidence before you. The acceptance "being in the possession of Jane Stamps, the presumption of "law is that she is the owner thereof for value, and it devolves "upon the party claiming the ownership of said acceptance, ad- "versely to her, to rebut that presumption of law by evidence "showing a superior right in them to the paper; and in order to "establish their superior right to the acceptance, P. J. Willis & "Bro. must prove to your satisfaction that they became the own- "ers of the same before it was transferred to Mrs. Stamps, and "that the latter had notice of their rights when she acquired it. "If, therefore, the jury believe from the evidence that P. J. Wil- "lis & Bro. had become the owners of the acceptance in ques- "tion, previous to its transfer to Mrs. Stamps, and that the latter "had notice of the rights of Willis & Bro. when she acquired "the same, you will find for Willis & Bro., otherwise for Jane "Stamps."

"If the jury believe from the evidence that the suit insti- "tuted by Willis & Bro., in Austin county, was instituted before

"the transfer of the acceptance to Mrs. Stamps, and that at the
"time said suit was instituted, Willis & Bro. were the owners of
"said acceptance, then the commencement of the suit was notice
"to all persons of the rights of Willis & Bro. in the acceptance,
"and they will find for Willis & Bro."

Now, we respectfully submit to the court that the charge of
the judge was as strongly in favor of Willis & Bro. as it could
possibly have been, unless the court below had undertaken to
decide the case for the jury.

And besides, while we are not prepared to admit the doctrine
of *lis pendens* to such an extent as is given in the charge, yet,
for the purposes of this suit, we do not deem it necessary to
enter into an extended discussion of it; and so we feel, in re-
gard to the principle urged by counsel, that the fact of the
draft being past due was sufficient notice to Jane Stamps that
the ownership and title of the paper were questionable.

We might, with confidence, contend that, even if Mrs. Stamps
knew of everything which transpired between Faddis and Wil-
lis & Bro., as detailed in the testimony, she was still entitled to
the draft, because nothing transpired between them changing
the ownership of the draft from Faddis to Willis.

Now, the court will observe that there is no testimony to
show that the suit in Austin county was instituted before Mrs.
Stamps acquired the draft. On the other hand, Mr. Faddis,
Willis' witness, testified that he had no idea Willis & Bro. had
any claim to the draft at the time he transferred it; and again,
the presumption of law is that Mrs. Stamps acquired the draft
before it was due, and Faddis says that he never endorsed the
draft after it was due.

But the whole case was narrowed down to two points, both of
which were left fairly to the jury; that is, first, did Willis &
Bro. own the draft at the time Mrs. Stamps acquired it? and if
they did, then did Mrs. Stamps have notice, actual, legal, or con-
structive, at the time she acquired it, of the claims and rights
of Willis & Bro.?

Now, both of these questions must have been answered by

the jury in the affirmative, before verdict could have been given for Willis & Bro. They were both questions of fact, and were fairly submitted to the jury. It makes no difference whether one was true; both must have been true before Willis could justly claim the draft; and the jury, under the charge, found for Mrs. Stamps. If the jury, in their mind, answered either one of these questions negatively, they were bound to find for Mrs. Stamps. If they answered both affirmatively, they would then have found for Willis.

Now, let us see if the jury were justified in answering either one of these questions negatively; and for this purpose, we will come squarely up to the point, and confidently contend, that the jury were justified, and ought rightfully to have answered the first question in the negative; that is, that Willis & Bro. were not the owners of the draft at the time Mrs. Stamps acquired it; and if this is true, that they were not the owners at that time, then the other question of notice amounts to nothing, for there was no ownership or claim in Willis to notice.

Upon the trial of the case Mrs. Stamps simply offered in evidence the draft and acceptance; all the other witnesses were for Willis & Bro. He endorses their truth and correctness by making them his witnesses, and ought not to complain of them.

The court will observe, that Mrs. Stamps stands before the court as a purchaser *bona fide*, and for a valuable consideration. She took the draft in part payment of some of her goods, which Faddis had sold for her. Faddis proves this.

Now, Faddis swears positively, that he never did agree to turn over to Willis & Bro. the draft in question. Is it not strange that Faddis did not deliver them the draft? This fact itself shows that Faddis had not transferred them the draft; they had no possession of it; nor was it even endorsed to them. When business men transfer and receive negotiable paper, they usually endorse it and deliver it. Does any one suppose that Willis & Bro. gave Faddis credit for the draft before they got it? A mere promise to let them have it cannot possibly have anything to do with this case. But Faddis says he never

promised to let them have it. Faddis says: "I did not deliver
"it to them (Willis & Bro.) because I saw proper to use it other-
"wise." Well, surely he had a right to do this. He says, "I
"asked Richard Willis to take the draft in payment of his claim.
"This he did not do." "Willis agreed to take such notes and
"accounts as we might agree upon, this draft, of course, not being
"included."

Why, when all this was going on, the draft had not been ac-
cepted; and Faddis says that the Railroad Company had for
some time "refused to accept the draft." So Willis & Bro. re-
fused to take the draft. Why did they do so? Evidently
because it had never been accepted by the drawee; but they
afterwards found it convenient to contend for it, and hence this
suit.

Willis surely did not then and there receive the draft in pay-
ment. It cannot be. Faddis says he let Mrs. Stamps have the
draft "in good faith, in payment of goods sold for her, and she
"so received it."

"Mrs. Stamps did not have anything to do with my transac-
"tions with Willis & Bro."

Harris, also a witness for Willis & Bro., and acting as attor-
ney for them, says: "I never had possession of the draft."

We beg the court to observe that Harris testifies that the con-
tract between Faddis and Willis & Bro., under which Willis &
Bro. claim the draft, and under which the suit was instituted in
Austin county, was made upon the 14th day of April, 1868
(Record, p. 31), which was thirteen days before the draft was
accepted by the Railroad Company; and then, too, when Fad-
dis says it was very doubtful whether they would accept it or
not; and yet Willis & Bro. contend that, at that time, he trans-
ferred them the paper and they so received and understood it!

Nowhere does Harris say that anything more was done by
Faddis, except that he "agreed to turn over and assign," etc.,
showing and admitting that he had not then "turned over and
"assigned," etc.; and this is what is alleged in the petition in the
Austin county suit.

OGDEN J.   Mrs. Jane Stamps was the real plaintiff in this cause in the court below.   She had brought suit on an acceptance by the Houston and Texas Central Railway Company, and prayed for judgment, costs, etc.   She therefore had to prove ownership of the acceptance, and that the same was not paid, or she would not be entitled to recover ; and therefore the court did not err in allowing her by her counsel to open and close the argument in the cause.

The only material contested questions in the cause were purely questions of fact, to be determined by the jury, and if they have found a verdict in response to the facts proven, and the law as given them by the court, that verdict will not be disturbed, unless the court erred in attempting to charge the law of the case.

There was no question that the appellee had possession of the acceptance, and was therefore *prima facie* the owner ; and no one claimed that it had been paid, but on the contrary the Railroad Company admitted the fact that the acceptance was not paid, and that they were liable and ready to pay the same as soon as it should be determined who was the owner and entitled to receive the pay.   The evidence in regard to appellants' rights in the acceptance was conflicting, and somewhat contradictory ; but we think the jury very properly came to the conclusion that appellants had failed to establish the fact of a transfer to them, and that they were not entitled to a judgment for the same.

The charge of the court was certainly the law which should have controlled the findings of the jury.   Perhaps it might have been worded so that it would have been more readily and fully understood ; and yet, from their verdict, we are inclined to the opinion that the jury understood not only the law but the facts of the case, and as we have been unable to discover any error in the judgment, it is affirmed.

Affirmed.